No. 6614.

STATE vs. WILLIAM WILLIAMS.

The Legislature may, within constitutional limits, make any changes in the bound-
aries of parishes, and of judicial districts. It may, in forming judicial districts,
divide the territory of a parish into two, or more districts.
The act of 1876, making the Sixth and Seventh Municipal Districts of the parish of
Orleans a part of the *Second* Judicial District, is constitutional.
The Seventh Municipal District of the parish of Orleans being a part of the territory
of the Second Judicial District, the Superior Criminal Court for the parish of
Orleans has no jurisdiction of any offense committed in said municipal district.

APPEAL from the Superior Criminal Court, parish of Orleans. *Whit-
aker, J.*

*H. N. Ogden,* Attorney General, for the State.

*J. N. Hagins,* for defendant and appellant.

The opinion of the court was delivered by

MARR, J. The accused was convicted of burglary and grand larceny
in the Superior Criminal Court for the parish of Orleans, and was sen-
tenced to the penitentiary for four years on the first charge, and two
years on the second. On. the refusal of the court to grant him a new
trial he appealed.

The offenses were committed in the Seventh Municipal District of the
parish of Orleans, on the twenty-eighth of May, 1876. The information
was filed on the seventeenth of October, and the accused was tried and
convicted on the twenty-first of February, 1877. The sole question is as
to the juisdiction of the Superior Criminal Court for the parish of Or-
leans.

The Seventh Municipal District was the city of Carrollton, in the parish
of Jefferson, part of the Second Judicial District of the State, estab-
lished by the act of 1860. By act No. 71, of 1874, approved March 23,
this territory was detached from the parish of Jefferson, and annexed to
the parish oᶠ Orleans and city of New Orleans, as the Seventh Municipal
District. By the second section of this act this territory was to "be and
remain and constitute a part of the Second Judicial District of the
State."

In our opinion this provision of the act was within the power of the
Legislature. The jurisdiction of the courts of a parish extends to all the
territory and all the inhabitants within the limits of the parish, where no
law otherwise provides. Article eighty-three of the constitution of 1868
requires that the judicial districts shall remain unchanged for four
years ; and in the Remmers case, just decided, we held that the four
years have reference to the judicial term, which expires at each general
election, counting from the month of November, 1868. It was within the
power of the Legislature to detach this territory at any time, and to an-

nex it to the parish of Orleans, but it was not competent to detach it from the judicial district to which it belonged, and to place it in another judicial district until the general election in November, 1876, at which time the judicial term expired.

By act No. 45, of 1876, approved eighteenth March, it is declared that the Second Judicial District shall be composed of the parishes of St. Bernard, Plaquemines, Jefferson, and the Sixth and Seventh Municipal Districts of the parish of Orleans. In the Remmers case we held that the effect of this act was suspended, so far as the Sixth District was concerned, until the expiration of the term of the judge of the Second Judicial District, that is, until the general election, in November, 1876. The Sixth Municipal District, which was annexed to the parish of Orleans, was clearly under the jurisdiction of the First Judicial District from and after the general election of 1872; and we held that it necessarily so continued until the general election in November, 1876. The Seventh Municipal District, by the express terms of the act of 1874, No. 71, remained a part of the Second Judicial District until the expiration of the term of the judge of that district, November, 1876; and this act of 1876 simply left these two districts in the precise condition in which they were at the date of its passage, until the general election of November, 1876.

If the act of 1876 be a legitimate exercise of legislative power, the Sixth and Seventh Municipal Districts are subject to the exclusive jurisdiction of the court of the Second Judicial District, for the Sixth and Seventh Municipal Districts. The Seventh Municipal District has never been subject to the jurisdiction of the courts of the First Judicial District; and the Sixth Municipal District ceased to be part of the First Judicial District, from and after the general election in November, 1876.

We must refer here to the opinion just pronounced in the Remmers' case, for a full discussion of these questions; and we might content ourselves with what is said in that case, but for the fact that the accused was tried in February, 1877, when the entire territory and all the inhabitants of the parish of Orleans were subject to the jurisdiction of the courts of the First Judicial District, unless some law otherwise provided. The act of 1876 does otherwise provide; but it is urged that this act is in violation of the constitution; and it becomes necessary for us to pass upon and determine that question.

We premise that the Legislature, without any special grant of power, may change the boundaries of the parishes; and may change the judicial districts so far as the constitution has not imposed restrictions on the exercise of this power. The constitution of 1868 has limited this power:

First—By providing that the number of judicial districts shall not be less than twelve, nor more than twenty.

State vs. Williams.

Second—By requiring that the judicial districts shall remain unchanged for four years.

In determining whether the Legislature has power, under the constitution to do any act, the *argumentum ab inconvenienti* is entitled to but little weight. In all such cases the question is one of power, not of convenience, not of public policy, not of wisdom. If the power exists, the judicial tribunals have nothing to do with questions of the propriety or the policy of the exercise of that power.

It is supposed, and argued, that the Legislature has no power to divide a parish in the formation of judicial districts. The constitution, article twenty-nine, provides that no parish shall be divided in the formation of a senatorial district, the parish of Orleans excepted. There is no such prohibition with respect to judicial districts; and the argument is one of inference and deduction only, and of the supposed inconvenience of subjecting the territory and inhabitants of a portion of the parish to the jurisdiction of one judicial district, and the territory and inhabitants of another portion to the jurisdiction of another judicial district. It is worthy of note that this prohibition is applicable to the power to form senatorial districts alone; and as the power to divide the State into judicial districts is not subject to any such limitation, it would seem to have been the intention of the constitution to leave it within the discretion of the Legislature to divide parishes, in the formation of judicial districts, if the public convenience should so require.

The parish of Orleans has not been actually divided; that is, it remains in its integrity, composed of its seven municipal districts, five of which are part of the First Judicial District, and two, the sixth and seventh, are made parts of the Second Judicial District by the act of 1876.

This act creates a court, the "Second Judicial District Court for the sixth and seventh municipal districts of the parish of Orleans;" the sessions of which are to be held in the seventh district. In every sense this is a district court of the parish of Orleans. It has no jurisdiction out of the parish of Orleans, it sits in the parish of Orleans, its executive officers are the civil and criminal sheriffs of the parish of Orleans, its clerk is elected by the qualified voters of the sixth and seventh municipal districts of the parish of Orleans, and its jurors are the registered voters of the sixth and seventh municipal districts of the parish of Orleans. Article eighty-three of the constitution empowers the Legislature to establish as many district courts in the parish of Orleans as the public interests may require; and nothing in the constitution limits the power of the Legislature to confer upon such courts such jurisdiction as it may choose, except that the amount in controversy must be above one hundred dollars. It is nowhere provided that all the district courts or any of the district courts which the Legislature may establish in the

parish of Orleans shall have jurisdiction throughout the parish; and there is no good reason why a district court might not be established in each municipal district, having no jurisdiction beyond the limits of that district, if the Legislature should think the public interests so required.

The constitution requires that the clerks of the district courts shall be elected by the qualified voters of their respective parishes : the district judges are also to be elected by the qualified voters of their respective districts, article eighty-three ; and article six declares that " a party accused shall be entitled to a speedy public trial, by an impartial jury of the parish in which the offense was committed." Does it thence follow that the jurors must be taken from the entire parish ; or that the clerk must be elected by the voters of the entire parish? As to the judge, the constitution simply requires that he shall be elected by the qualified voters of his district. As to the sheriffs, there is no difficulty, because they are elected by the qualified voters of the entire parish, and they exercise their functions and authority throughout the parish.

By the constitution of 1845, article eighty-one, it was provided that the justices of the peace should " be elected by the qualified voters of each parish." The act of 1846, No. 103, required that the justices in the country parishes should be elected in each ward of the several parishes by the qualified voters and residents of that ward.

The act No. 106, of 1846, provided that the justices in the city of New Orleans, six in number, should be elected by the qualified voters of the representative districts respectively. Their jurisdiction was concurrent throughout the parish, except that portion lying on the right bank of the river.

In Schmidt's case, 1 An. 387, it was urged that this act was in violation of article eighty-one of the constitution ; and that the justices must be elected by the qualified voters of the entire parish. The court held that this division of the country parishes into wards, and the city into districts, and the election of the justices by the qualified voters of the wards and districts respectively, " according to all reasonable principles of construction, can not be held to be contrary to the text of the constitution, and it is certainly in accordance with the sense of a large majority of those who framed it."

The act of 1876 does not deprive any voter of the right to vote for the judge having jurisdiction over him. The qualified voters of the Sixth and Seventh Municipal Districts had the right and the opportunity to vote for the judge of the Second Judicial District for the Sixth and Seventh Municipal Districts of the parish of Orleans ; for that judge is elective by the qualified voters of his entire district ; they had the right

and the opportunity to vote for the clerk of that court, because he is elective by the voters of those two districts exclusively; they had the right and the opportunity to vote for the executive officers of that court, the civil and the criminal sheriffs of the parish of Orleans, because they are elective by the qualified voters of the entire parish of Orleans; and they have the right and privilege of being tried by jurors selected from the entire number of the registered voters of those two districts, who are also jurors of the parish of Orleans, although they are exempt from jury duty in any other court.

The inhabitants of these districts thus have the right to vote for every elective officer, having authority over them; and the right to be tried by jurors of their own parish. Their rights are not diminished in any respect. The object of the trial by jury in criminal cases is to secure the accused against punishment except by the judgment of his peers of the vicinage: and these citizens of the parish of Orleans are more favored in this respect than the inhabitants of the other districts of the city, because the jurors upon whose verdicts their lives, their liberty, and their property may depend are not drawn from the parish at large, but from these two districts alone, from the vicinage, the immediate neighborhood.

The act of 1876 violates no clause or feature of the constitution; it impairs, in no respect, the rights of the citizen. It is, in point of fact, not merely not inconvenient to them, but most convenient—giving them, besides all the other advantages, a court near to them, and in exempting them from the jurisdiction of other courts, civil and criminal, except in matters of probate.

This act confers exclusive and unlimited jurisdiction, civil and criminal, on the court of these two districts; and it was perfectly competent for the Legislature to create that court, and to organize it precisely as provided by the act.

The Legislature of 1877, by act eighty-five, repealed this law; but it expressly suspends this effect until the expiration of the term of the judge of the Second Judicial District in November, 1880.

We have read with care and with pleasure the able arguments submitted to us in this and in the Remmers case; and our conclusion is that the Sixth Municipal District became a a part of the Second Judicial District in November, 1876; that the Seventh Municipal District has never, since the act of 1860, been part of any other judicial district than that to which it belonged, as a component part of the parish of Jefferson; and that both these districts are now parts of the Second Judicial District, subject to the exclusive jurisdiction, except in matters of probate, of the Second Judicial District Court of the Sixth and Seventh Municipal Districts of the parish of Orleans.

The consequence is that the Superior Criminal Court was without juris-

diction of the offenses committed in the Seventh Municipal District, on the twenty-eighth of May, 1876 ; that it was without jurisdiction when the information was filed, on the seventeenth of October, 1876 ; and without jurisdiction when the accused was tried and convicted, on the twenty-first of February, 1877. The whole proceeding against the accused was *coram non judice* and void ; and the judgment and sentence are mere nullities.

The accused, having been tried by a tribunal wholly without jurisdiction, has not thereby been put in jeopardy in the sense of the law; and he should be held to answer before the Second Judicial District Court, of the Sixth and Seventh Municipal Districts of the parish of Orleans.

It is therefore ordered, adjudged, and decreed that the judgment and sentence appealed from be annulled, avoided, and reversed; that the information be dismissed, and that the accused be held by the criminal sheriff of the parish of Orleans to answer for the offenses of burglary and grand larceny, with which he is charged, before the Second Judicial District Court, of the Sixth and Seventh Municipal Districts of the parish of Orleans.

DISSENTING OPINION.

EGAN, J. I dissent from the decree in this case, and adhere to the opinion expressed in the Remmers case, that the division of parishes in the formation of judicial districts should not be sanctioned. I can not see how it is possible to give full effect to the provisions of the constitution in regard to the trial by an impartial jury of the parish and those in regard to the election of clerks and sheriffs by the qualified voters of the parish, which in my opinion means the whole parish, and not any part of it. How can the right of trial by an impartial jury of the parish be said to exist when the juries are drawn from only part of the parish, and if it is competent to say that the jury may be drawn from the part of the parish nearest ? Why not from that most distant from the accused or where the crime was committed? All these provisions must be considered in conjunction with the power to create judicial districts. This case and the act of 1876 afford an illustration of the difficulties growing out of an attempted violation of this principle. Neither can I assent to the division of the parish of Orleans, especially under the provision of the constitution which specially excepts that parish from the general rule as to division into judicial districts, etc., applicable to other parts of the State.

As to the argument that the Legislature had power to create the Second Judicial District Court for the Sixth and Seventh Districts under the

general power conferred by article eighty-three, constitution of Louisiana, it is sufficient to say that act — of 1876 was not even an attempt at the exercise of that power, but was an attempt to divide the parish of Orleans for the formation of a judicial district not within the parish of Orleans, but partly within and partly without that parish, and in violation of the constitution to permit voters outside the parish of Orleans to have a voice in the selection of a judge exercising functions and presiding within its limits.    It is clear from the title and terms of the act that the intention was to define and extend the limits of the Second Judicial District of the State, and not to create another district court in the parish of Orleans. This I think can not be done, and if attempted is fraught with inconveniencies and difficulties so serious that they should in future deter from such legislation for that reason alone if the constitutional objection did not attach. Imagine, for instance, the clerk of the parish of Livingston called upon to act as such under authority as clerk of two different district courts sitting in the same parish at the same time, with different judges presiding by reason of a division of the parish in the formation of a judicial district. Until the legislation, the effect of which we are now reviewing, the uniform practical interpretation of the power given by the constitution to create additional district courts for the parish of Orleans had been in accordance with the views herein expressed.